UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ADELA TOVAR, MARIA GONZALEZ, and MARIA GARZA, § § § | | |
| Plaintiffs, § § | | |
| v. § § | CIVIL ACTION NO. 3:20-CV-1455-B | |
| SOUTHWESTERN BELL TELEPHONE, L.P. a/k/a AT&T COMMUNICATIONS OF TEXAS, LLC a/k/a AT&T SOUTHWEST, and AT&T SERVICES, INC., § § § § § § § | | |
| Defendants. § | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs Adela Tovar, Maria Gonzalez, and Maria Garza (collectively, "Plaintiffs")'s Motion for Attorneys' Fees and Costs (Doc. 59). For the following reasons, the Court **GRANTS IN PART** Plaintiffs' motion, subject to the reductions described below.

## I.

## BACKGROUND

Plaintiffs brought this action under the Fair Labor Standards Act ("FLSA") for unpaid overtime claims. Doc. 1, Compl. Four months before trial was set to begin, Defendants made a Rule 68 Offer of Judgment, which Plaintiffs accepted. Doc. 51, Offer J. Plaintiffs obtained judgment of $1,826.40 ($638.24 for Tovar, $691.50 for Gonzalez, and $496.66 for Garza), plus costs and attorneys' fees to be determined by the Court. Doc. 54, J. Plaintiffs now move for attorneys' fees

under 29 U.S.C. § 216(b). Doc. 59, Mot. Fees. This motion is fully briefed and ripe for review. The Court considers it below.

## II.

## LEGAL STANDARD

Successful FLSA plaintiffs are entitled to reasonable attorneys' fees and costs. 29 U.S.C. § 216(b). In the Fifth Circuit, determining reasonable attorneys' fees generally involves a two-step process. *Jimenez v. Wood Cnty.*, 621 F.3d 372, 379 (5th Cir. 2010). The process begins with the calculation of the "lodestar." *Id.* "The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012)). "There is a strong presumption of the reasonableness of the lodestar amount." *Id.* (citing *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006)).

After calculating the lodestar, courts evaluate the resulting value in relation to "the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974)."[1] *Jimenez*, 621 F.3d at 380. Under certain circumstances, "a district court may enhance or decrease the amount of attorneys' fees based on 'the relative weights of the twelve factors set forth

---

[1] The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

in *Johnson.*'" *Black,* 732 F.3d at 502 (citing *Saizan,* 448 F.3d at 800). "The lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar." *Id.* (citing *Saizan,* 448 F.3d at 800).

## III.

## ANALYSIS

Plaintiffs prevailed under the FLSA by accepting Defendants' Rule 68 Offer of Judgment. Doc. 55, J. Thus, Plaintiffs are entitled to reasonable attorneys' fees and costs. *See* 29 U.S.C. § 216(b). Below, the Court analyzes Plaintiffs' Motion for Attorneys' Fees and Costs. First, the Court considers Plaintiffs' calculation of the lodestar and Defendants' challenges to that calculation. Second, the Court considers the *Johnson* factors and determines if further adjustment is warranted.

A.  *Lodestar Calculation*

Plaintiffs seek to recover attorneys' fees from Defendants in the amount of $92,777.45[2] based on 151.8[3] hours of work performed by five attorneys and one paralegal. Doc. 59, Mot. Fees, 6. The Court notes that counsel each voluntarily deducted time they considered unproductive, excessive, or redundant; time for work done by administrative staff; and time billed in error. *See id.* Plaintiffs' counsel calculated their lodestar as follows:

---

[2] In their motion, Plaintiffs errantly refer to $127,218.00 as their lodestar amount, but correct the record to claim $92,777.45 as their lodestar. Doc. 67, Pls.' Reply, 2 n.1.

[3] Plaintiffs' motion refers to "131 hours of attorney and paralegal time" spent working on this case. Doc. 59, Mot. Fees, 10–11. However, the sum of hours from each attorney's declaration is 151.8. *See* Doc. 60-1, Braziel Decl., 6, 12; Doc. 60-2, Dunn Decl., 4, 6, 14, 23. The Court conducts its analysis of the lodestar based on 151.8 hours.

| Professional | Hourly Rate | Hours | Lodestar |
|---|---|---|---|
| J. Derek Braziel | $650 | 49.6 | $32,240.00 |
| Glen J. Dunn, Jr. | $595 | 81.5 | $48,492.50 |
| Jeff Brown | $590 | 20.7 | $12,045.25[4] |
| Elizabeth Beck | $350 | 0[5] | $0 |
| Michael Hallock | $495 | 0[6] | $0 |
| Maria Ruiz | $195 | 0 | $0 |
| **Total** | | **151.8** | **$92,777.45**[7] |

*See* Doc. 60-1, Braziel Decl., 6, 9–12; Doc. 60-2, Dunn Decl., 4, 8–23.

The Court evaluates Plaintiffs' lodestar by first turning to their proposed hourly rates, and second to the amount of hours billed. The Court concludes by presenting a revised lodestar based on adjustments made to both the hourly rate and hours expended.

1.  Hourly Rates

The appropriate hourly rate is the market rate in the community for the kind of work done in the case. *Black*, 732 F.3d at 502. The relevant legal community "is the community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (quoting *Scham v. Dist.*

---

[4] Mr. Brown charged $59.00 for 0.25 hours on September 30, 2020, and $490.00 for 0.35 hours on May 6, 2021.

[5] In their motion, Plaintiffs list an hourly rate for each of the professionals listed in this chart. Doc. 59, Mot. Fees, 6. Plaintiffs' declarations and supporting appendices do not list any hours or tasks performed by Ms. Beck (a junior associate) or Ms. Ruiz (a paralegal). Mr. Braziel "eliminated all time billed on this file by anyone other than himself," presumably including Ms. Beck and Ms. Ruiz. Doc. 59, Mot. Fees, 6.

[6] Mr. Hallock's hours were voluntarily waived by Plaintiffs. Doc. 60-2, Dunn Decl., 5.

[7] The actual sum of charges between the three attorneys is $92,777.75, but Plaintiffs claim $92,777.45 in their motion.

*Cts. Trying Crim. Cases*, 148 F.3d 554, 558 (5th Cir. 1998)); *see also Am. Zurich Ins. Co. v. Jasso*, 598 F. App'x 239, 250 (5th Cir. 2015). In assessing the prevailing market rate for the community, a court may properly consider evidence of hourly rates in other cases as well as affidavits regarding the reasonableness of suggested rates. *Associated Builders & Contractors of La., Inc. v. Orleans Par. Sch. Bd.*, 919 F.2d 374, 379 (5th Cir. 1990). Generally, the reasonable hourly rate is established through affidavits of other attorneys of similar caliber practicing in that community. *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993). Courts also consider an attorney's expertise and experience, where he or she practices, the size of the firm, and firm's reputation. *Radiant Sys., Inc. v. Am. Scheduling, Inc.*, 2006 WL 2583266, at *7 (N.D. Tex. Sept. 7, 2006).

To justify their proposed hourly rates, Plaintiffs point to the 2022 Attorneys' Fees Hourly Rates "Yearbook" published by the Texas Employment Lawyers Association. Doc. 60-4, Att'ys.' Fees Y.B. The Yearbook highlights large attorneys' fee awards won by labor and employment attorneys throughout this district. *See id.* The implication is that the hourly rates are reasonable if they conform to the rates awarded in the community, as reported in the Yearbook. *See* Doc. 59, Mot. Fees, 13. In response, Defendants offer State Bar of Texas 2015 Hourly Fact Sheet and State Bar of Texas Survey Data from 2019. Doc. 64-3, Exs. C, D. Defendants argue that the median hourly rates for attorneys in the Dallas–Fort Worth Metropolitan Statistical Area and the 2015 Hourly Rate Sheet provide the definitive sources for determining reasonable rates for attorneys' fees. *See* Doc. 63, Defs.' Resp., 5–7. Predictably, there is a large gap between the data reported by each parties' sources.

The Court declines to treat the State Bar median rates as authoritative in determining reasonable rates. The State Bar data, which only report median rates, do not account for the rate that might be reasonably charged by an attorney with significant experience or expertise in the field,

nor does it account for increases in rates since their publication in 2015 and 2019, respectively. However, the Court follows other courts in considering the median rates as some evidence of the appropriate market rate. *See Alvarez v. McCarthy*, 2022 WL 822178, at *4–6 (5th Cir. Mar. 18, 2022); *Geophysical Serv. Inc. v. TGS-NOPEC Geophysical Co.*, 2020 WL 821879, at *9–10 (S.D. Tex. Feb. 19, 2020); *Nat'l Collegiate Student Loan Tr. 2006-3 v. Richards*, 2017 WL 3017231, at *5 (N.D. Tex. June 14, 2017).

Conversely, the Court does not find the plaintiffs' attorney fee "Yearbook" persuasive. Further, the Court finds no case or court that references the Yearbook or similar materials in determining reasonable hourly rates.

To get a more accurate picture of reasonable rates, the Court conducted a review of recent FLSA unpaid overtime cases[8] in district courts in Texas. Recent unpaid overtime cases indicate a range of $300–410 per hour for attorneys with substantial FLSA experience. *See, e.g., Johnson v. V Live Dall., LLC*, 2020 WL 10934777, at *2 (N.D. Tex. July 15, 2020) (finding $300 per hour reasonable for the Dallas community); *Sifuentes v. KC Renovations, Inc.*, 2022 WL 1050381, at *4–5 (W.D. Tex. Apr. 6, 2022) (awarding hourly rates of $350 for a fourteen-year senior managing attorney and $300 for a seventh-year attorney); *Melendez v. DJJRN, Inc.*, 2020 WL 7774940, at *5 (N.D. Tex. Nov. 16, 2020) (awarding $350 per hour to a fourteen-year lawyer who had tried over

---

[8] The Court notes that some FLSA cases have returned a higher hourly rate for attorneys' fees than those discussed here, but those cases generally involve more complex legal issues than the instant case, *see, e.g., Black v. SettlePou, P.C.*, 2012 WL 3638681, at *1, 4 (N.D. Tex. Aug. 24, 2012) (awarding $450 for a case with both unpaid overtime and employer retaliation claims), or the hourly rate of attorneys' fees was not contested. *See* Order Granting Joint Mot. Approval of Settlement and Dismissal, *Spence v. Irving Holding, Inc.*, No. 3:10-cv-142-F (N.D. Tex. Aug. 4, 2011), ECF No. 14 (finding $326.35 per hour "below what would be considered a reasonable rate," but approving it as reasonable as part of a settlement agreement between the parties). Thus, the relevant comparison is with FLSA cases for unpaid overtime claims where the parties had not agreed on the hourly rate of attorneys' fees.

fifty FLSA cases); *Leal v. All-City Trailer Repair, L.P.*, 2018 WL 4913786, at *2–3 (N.D. Tex. Oct. 10, 2018) (awarding Mr. Braziel $350 per hour); *Sheffield v. Stewart Builders, Inc.*, 2021 WL 951897, at *4–5 (S.D. Tex. Mar. 10, 2021) (awarding the lead attorney with "significant experience" a $400 hourly rate); *Meadows v. Latshaw Drilling Co.*, 2020 WL 291582, at *3 (N.D. Tex. Jan. 21, 2020) (awarding $410 per hour for an attorney with twenty-one years of experience and $275 for a junior attorney). *But see Hardy v. SDM Hosp.*, 2022 WL 272718, at *5–6 (N.D. Tex. Jan. 10, 2022) (awarding $525 per hour when the opposing party did not respond to the motion for fees so there was no challenge to the reasonableness of the hourly rate).

The Court notes Mr. Braziel's 26 years of labor and employment litigation experience, including over 200 unpaid overtime cases. Doc. 60-1, Braziel Decl., 1–3. The Court also notes Mr. Dunn's twenty-two years of experience, including more than fifty wage and hours cases, Doc. 60-2, Dunn Decl., 2–5. The Court further recognizes that each of these attorneys is either sole a practitioner or the managing attorney of a firm with just one other attorney. Doc. 67, Pls.' Reply, 7. A reasonable rate for attorneys with the level of experience demonstrated by Plaintiffs' attorneys could be above the median, but Plaintiffs claim rates substantially outside the range of rates recently awarded to similarly situated attorneys in this district. Thus, the Court finds that the reasonable hourly rates in the Dallas community are $450 for Mr. Braziel, $412 for Mr. Dunn, and $408 Mr. Brown.[9] Because no hours are claimed for Ms. Beck, Mr. Hallock, and Ms. Ruiz, the Court does not analyze the reasonableness of their hourly rates.

---

[9] After finding the reasonable rate for Mr. Braziel to be $450, the Court set the reasonable rates for Mr. Dunn and Mr. Brown by using the same proportional relationship as requested in Plainitffs' lodestar. (For example, Mr. Dunn's proposed rate of $595 is 91.54% of Mr. Braziel's proposed rate of $650. Therefore, Mr. Dunn's reasonable rate is 91.54% of $450—$412.)

2.   Number of Hours

The party seeking reimbursement of attorneys' fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records. *See Watkins,* 7 F.3d at 457. This includes showing the reasonableness of the hours billed and that billing judgment was exercised. *Saizan*, 448 F.3d 799. "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Id.* The Court should use the hours recorded as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *See Watkins,* 7 F.3d at 457. The hours remaining are those reasonably expended. *See id.*

Plaintiffs' counsel submitted detailed time records reporting that 151.8 hours[10] were spent on this case after they eliminated hours they considered unproductive, excessive, or redundant, hours for work done by administrative staff, and time billed in error. *See* Doc. 59, Mot. Fees, 6; Doc. 60-1, Braziel Decl., 6, 9–12; Doc. 60-2, Dunn Decl., 4, 8–23. Defendants respond with an extensive analysis of the time entries and tasks reported by Plaintiffs, arguing that many hours billed were duplicative entries, clerical in nature, not related to this case, or inconsistent with other sworn testimony. *See* Doc. 63, Defs.' Resp., 12–15. The Court analyzes each of these categories and applies adjustments as explained below.

   *i. Duplicative time entries*

Entries that reflect duplicative or repetitive work are generally disallowed. *See, e.g.*, *Castro v. Precision Demolition LLC*, 2017 WL 6381742, at *6 (N.D. Tex. Dec. 14, 2017). Defendants claim that entries representing a total of 23.6 hours from the three attorneys were nearly or completely

---

[10] *Supra* n.3.

identical or represent duplicative work, arguing that time for those entries should be stricken. *See* Doc. 63, Defs.' Resp., 12–13, 16. Plaintiffs do not respond to this argument in their reply. *See* Doc. 67, Pls.' Reply. After reviewing the alleged duplicative and repetitive entries, the Court agrees that entries containing identical write-ups submitted by different attorneys on the same day or entries that refer to the same tasks on the same document are duplicative or repetitive work and should be disallowed. Thus, the Court strikes 2.2 of such hours from Mr. Dunn, 14.7 from Mr. Braziel, and 6.7 from Mr. Brown.[11]

### ii. Clerical tasks

Defendants argue that the hours should further be reduced because many of the billing entries were clerical in nature. Doc. 63, Defs.' Resp, 14–15. Indeed, "[c]lerical work 'is not recoverable in an award of attorneys' fees.'" *Black v. SettlePou, P.C.*, 2014 WL 3534991, at *6 (N.D. Tex. July 17, 2014) (citing *Vela v. City of Hous.*, 276 F.3d 659, 681 (5th Cir. 2001)). "[T]he [c]ourt should consider whether the work performed was legal work in the strict sense or was merely clerical work that happened to be performed by a lawyer." *Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 536 (5th Cir. 1986) (internal quotation marks omitted). Defendants provided an entry-by-entry analysis of alleged clerical tasks that were billed by Plaintiffs. Doc. 64-1, Defs.' Ex. A, 24–28. Plaintiffs do not challenge that the entries were clerical in nature. *See* Doc. 67, Pls.' Reply. Plaintiffs seem to have billed 0.1 hours each time they received an ECF notification for a document filing. *See* Doc. 63, Defs.' Resp, 14–15. After reviewing the entries for clerical tasks, the Court finds that entries that bill for clerical work, such as the reflexive billing for receipt of every ECF notification and time billed for

---

[11] The Court concurs with the analysis of duplicative entries provided by Defendants in Doc. 64-1, Defs.' Ex. A, 3–23, which includes dozens of billing entries with identical write-ups by different attorneys on the same days, often with standardized "receipt and review" language.

calendaring meetings, are clerical entries and should be stricken. *See Black*, 2014 WL 3534991, at *6 (disallowing entries for calendaring); *Barrow v. Greenville Indep. Sch. Dist.*, 2005 WL 6789456, at *12 n.21 (N.D. Tex. Dec. 20, 2005); *Rangel v. Aetna Life Ins. Co.*, 2016 WL 1449539, at *4–5 (C.D. Cal. Apr. 12, 2016) (disallowing 0.1 hour entries for reviewing ECF notifications as clerical tasks); *H.W. v. N.Y.C. Dep't. of Educ.*, 2022 WL 541347, at *4 (S.D.N.Y. Feb. 23, 2022) (disallowing ECF notification review as clerical); *Rorie v. WSP2, LLC*, 2021 WL 4900992, at *4 (W.D. Ark. Oct. 20, 2021) (disallowing time for "widely disfavored 'receipt and review' billing" for ECF notifications). Therefore, the Court strikes 6.0 hours from Mr. Dunn[12] and 0.75 hours from Mr. Brown[13] as nonrecoverable clerical work.

      *iii.    Work not related to this case*

Defendants point out that several of Plaintiffs' time entries seem to be for work on other cases not related to this case. *Id.* at 15. Plaintiffs do not respond to this claim. *See* Doc. 67, Pls.' Reply. After reviewing Plaintiffs' time entries, the Court determines that entries that explicitly refer to other

---

[12] This includes fifty-two 0.1 hour "reciept and review of email from ECF regarding Dkt." entries, an entry for 0.1 hours on August 20, 2020, for calendaring deadlines, entries for 0.1 hours on September 18 and 21, 2020, for scheduling and calendaring Meet and Confer and Webex invitations, entries for 0.3 hours on January 7, 2021, for scheduling a mediator, a 0.1 hour entry on November 2, 2021, for confirming a mediation date, and a 0.1 hour entry on February 1, 2022, regarding availability for scheduling conferral. Doc. 64-1, Defs.' Ex. A, 24–28.

[13] This includes a 0.25 hour entry on August 11, 2020, for calendaring a Webex meeting, a 0.25 hour entry on September 18, 2020, for scheduling mediation, and a 0.25 hour entry on September 21, 2020, for calendaring another Webex invite. Doc. 64-1, Defs.' Ex. A, 24–28.

parties not represented in this case should be disallowed. The Court strikes 1 hour from Mr. Dunn[14] and 1.15 hours from Mr. Brown[15] for time entries related to different cases.

> iv. *Hours inconsistent with other testimony*

Defendants allege that several of Plaintiffs' entries are inconsistent with other sworn testimony. Doc. 63, Defs.' Resp., 15–16. Specifically, Defendants claim that Pongpak Deepipat, Mr. Dunn's office manager, offered sworn testimony that he created pivot tables for data disclosures and damages, but Mr. Dunn billed for the work. *Id.* Plaintiffs explain the apparent inconsistency by conceding that Mr. Deepipat completed the work, but that Mr. Dunn's time entries regarded his supervision and review of Mr. Deepipat's work. Doc. 67, Pls.' Reply, 8–9. The Court finds Plaintiffs' explanation persuasive, and thus declines to strike any hours in this category.

> v. *Reallocation of hours*

Defendants argue that some of the hours billed should be reallocated to more junior attorneys, claiming that many of the tasks billed by Braziel, Dunn, and Brown could and should have been assigned to their associates. Doc. 63, Defs.' Resp., 16–17. First, this strategy of reducing the attorneys' fee is not supported by the caselaw, and the only case Defendants cite to support this approach indicates that the reasonable hourly rates were reduced because the court considered it a "nuisance suit," rather than the court engaging in a reallocation of hours to less expensive associates. *See Piechockie v. Beasley Imps., Inc.*, 2020 WL 4282220, at *2 (W.D. Tex. July 24, 2020). The Court

---

[14] This includes a 0.3 and a 0.5 hour entry on Apr. 15, 2020, for phone calls to plaintiffs in other cases, Veronica and Laura, respectively, and a 0.2 hour entry on June 8, 2020, regarding admission to the Western District of Texas. Doc. 64-1, Defs.' Ex. A, 29.

[15] This includes a 0.45 hour entry on June 8, 2020, regarding admission to the Western District of Texas, a 0.45 hour entry on Oct. 21, 2020, regarding Mazzawi, who is not a party in this case, and 0.25 hour entry on Oct. 22, 2020, regarding discussion of Mazzawi an as individual plaintiff. Doc. 64-1, Defs.' Ex. A, 29.

rejects this argument and declines to reallocate hours because, as discussed above, Plaintiffs' counsel has already waived hours worked by their associates, if they have associates at all. Any tasks that were completed by Plaintiffs' less expensive attorneys were waived by Plaintiffs rather than included in their lodestar. Thus, the Court cannot evaluate what tasks were assigned to more junior attorneys and if they should have been assigned more tasks. Moreover, there is no evidence in the record to indicate that Plaintiffs misrepresented who worked on the case. As Plaintiffs note, Plaintiffs manage small firms or are sole practitioners without the staff to delegate a significant volume of work. Plaintiffs claim to have "spread the work as much as possible" and accounted for the fact that their associates lacked meaningful FLSA experience. Doc. 67, Pls.' Reply, 7–8. Therefore, the Court declines to reallocate hours to the less expensive attorneys.

### 3. Adjusted Lodestar

After deducting 14.7 hours of duplicative entries, Mr. Braziel worked 34.9 hours. After deducting 2.2 hours of duplicative entries, 6.0 hours of clerical work, and 1.0 hour of work in other cases, Mr. Dunn worked 72.3 hours. After deducting 6.7 hours of duplicative entries, 0.75 hours of clerical work, and 1.15 hours of work in other cases, Mr. Brown worked 12.1 hours. Thus, the Court determines that the appropriate lodestar amount is as follows:

| Professional | Hourly Rate | Hours | Lodestar |
| --- | --- | --- | --- |
| J. Derek Braziel | $450 (from $650) | 34.9 (49.6) | $15,705.00 ($32,240.00) |
| Glen J. Dunn, Jr. | $412 ($595) | 72.3 (81.5) | $29,787.60 ($48,492.00) |
| Jeff Brown | $408 ($590) | 12.1 (20.7) | $4,936.80 ($12,045.25) |
| **Total** | | **119.3** | **$50,429.40** ($92,777.45) |

B.   Johnson *Factor Adjustments*

The Court now turns to the *Johnson* factors.[16] For the reasons outlined below, the Court finds a 5% downward adjustment is appropriate.

   1.   Monetary Amount Involved and Degree of Success

The Fifth Circuit has stated that "[t]he most critical factor in determining a fee award is the 'degree of success obtained.'" *Romaguera v. Gegenheimer*, 162 F.3d 893, 896 (5th Cir. 1998) (citing *Hensley v. Eckerhart,*, 461 U.S. 424, 436 (5th Cir.1998)). "While counsel obtaining excellent results are entitled to a fully compensatory fee, those with limited success may not be." *Id.* (internal quotations omitted). Here, Plaintiffs' counsel claimed a "home run" victory because they secured more damages than they calculated were due under the FLSA. Doc. 67, Pls.' Reply, 1; Doc. 59, Mot. Fees, 12. While true, Plaintiffs secured only $1,826.40, split between three claimants. *See*, Doc. 54, J.

Defendants argue that a reduction is warranted because Plaintiffs seek fees that are many multiples more than what they secured for their clients. Doc. 63, Defs.' Resp., 21. The Court disagrees. Due to the nature of the FLSA attorneys' fee provision, which provides an incentive for attorneys to take up meritorious claims that would ordinarily result in relatively small awards, *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), the difference in the results achieved and the attorneys' fees awarded is likely to be substantial and large differences between damages and fees should be expected. *See Saizan*, 448 F.3d at 800–02. This is because a typical FLSA claimant is an hourly employee and the attorneys who represent them usually charge substantially more per hour than their clients' overtime pay rate. Therefore, "there is no per se proportionality rule" for

---

[16] While the Court analyzed all twelve *Johnson* factors, the Court only discusses the factors that warranted an adjustment or full explanation.

relationship between the amount of damages awarded and the amount secured in attorneys' fees." *Id.* at 802. In this case, the Court does not find that the difference between the amount awarded to Plaintiffs and the attorneys' fees calculated in the Court's adjusted lodestar is concerning.

Defendants also argue that Plaintiffs' degree of success is low because they won on so few of their initial claims. *See* Doc. 63, Defs.' Resp., 20–21 (explaining that Plaintiffs initially claimed seven categories of unpaid overtime hours, but only succeeded on one). While it is true that Plaintiffs' complaint described seven types of unpaid overtime, *see* Doc. 1, Compl., Plaintiffs ultimately prevailed in securing all the unpaid overtime they claimed in their Rule 26(a)(1) disclosures. Doc. 64-2, Ex. B-1, 5–6; Doc. 54, J. So while the Court agrees that the judgment secured by Plaintiffs was small, the Court finds that Plaintiffs' degree of success was complete. Therefore, the Court does not find that a reduction in fees is warranted based on this factor.

2. Time and Labor Required and Novelty and Difficulty of the Legal Issues

Though every case differs in complexity and time demands, Plaintiffs report to have spent substantially more hours on this case than the typical FLSA case that involves a claim for unpaid overtime. *See, e.g., Hardy*, 2022 WL 272718, at *5–6 (4.3 hours); *Henderson v. Fenswick Protective, Inc.*, 2015 WL 9582755, at *6 (N.D. Tex. Nov. 23, 2015) (29.6 hours); *Melendez*, 2020 WL 7774940, at *5 (23 hours); *Ramos v. HT Electronics, LLC*, 2018 WL 6040257, at *6 (W.D. Tex. 2018) (3.3 hours). *But see Pineda v. JTCH Apartments, LLC*, 126 F. Supp. 3d 797, 803–06 (N.D. Tex. 2015) (finding 376.55 hours reasonable in an unpaid overtime case that also included an employer retaliation claim, but reducing the award by 25% due to the *Johnson* factors). This indicates that Plaintiffs billed more time than was necessary to litigate this case, given the unexceptional and routine nature of the legal issues involved. The issues in this case were fairly straightforward:

Plaintiffs worked more than forty hours during the specified weeks and sought to recover overtime pay for that time. However, Plaintiffs' attorneys billed more than eight times as many hours litigating this case as hours of overtime their clients were not paid. *See* Doc. 64-2, Ex. B-1, 5–6 (1,089 minutes—18.15 hours—of unpaid overtime pay claimed); Doc. 60-1, Braziel Decl., 6, 9–12; Doc. 60-2, Dunn Decl., 4, 8–23 (151.8 hours billed by attorneys). Given the routine nature of the legal issues in this case and the large number of hours billed, a downward adjustment is appropriate.

However, the Court acknowledges that a large portion of the time Plaintiffs spent working on this case was due to Defendants' litigation behavior. *See* Doc. 67, Pls.' Reply, 6–7. Defendants had the ability to provide individual reports of their employees' clock-in and -out times, total hours worked, and how often Plaintiffs were not paid for overtime clock-outs for the relevant period, but instead forced Plaintiffs to sift through lines of raw data to compile the information themselves. *Id.* This caused Plaintiffs to spend more time on the case than was necessary. Therefore, Defendants' litigation behavior mitigates the Court's *Johnson* factor reduction.

For the foregoing reasons, the Court imposes a 5% downward adjustment of attorneys' fees, resulting in a final fee award of **$47,907.93**. Because Plaintiffs waive costs, this is the final amount awarded to Plaintiffs.

## IV.

## CONCLUSION

For these reasons, the Court **GRANTS IN PART** Plaintiffs' Motion for Attorneys' Fees and Costs (Doc. 59) and awards Plaintiffs $47,907.93.

SO ORDERED.

SIGNED: June 27, 2022.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE